UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RAH COLOR TECHNOLOGIES LLC,

     Plaintiff,

v.

X-RITE, INC.,

     Defendant.

Civil Action No._____

JURY TRIAL DEMANDED

## COMPLAINT

This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code and relates to ten U.S. patents owned by RAH Color Technologies LLC ("RAH Color Technologies"):  U.S. Patent Nos. 7,312,897; 7,710,433; 7,710,560; 7,715,052; 7,729,008; 7,791,761; 8,009,175; 8,279,236; 8,416,444; 8,537,357 (collectively, the "Patents-in-Suit").

## THE PARTIES

1.     Plaintiff RAH Color Technologies is a limited liability company organized under the laws of the Commonwealth of Virginia.  RAH Color Technologies maintains an office at 7012 Colgate Drive, Alexandria, Virginia 22307.  RAH Color Technologies owns numerous United States patents generally related to the field of color management. Dr. Richard A. Holub manages RAH Color Technologies and is an original inventor of the Patents-in-Suit.

2.     Defendant X-Rite Incorporated ("X-Rite") is a Michigan corporation that maintains its principal place of business at 4400 44th St. SE, Grand Rapids, Michigan

49512. X-Rite imports, uses, makes, sells, and/or offers to sell spectrophotometers and software that employ color measurement and management techniques in the U.S.

## JURISDICTION AND VENUE

3.     This Complaint states causes of action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.,* and, more particularly 35 U.S.C. § 271.

4.     This Court has subject matter jurisdiction of this action under 28 U.S.C. §§ 1331 and 1338(a) in which the district courts have original and exclusive jurisdiction of any civil action for patent infringement.

5.     Personal jurisdiction is proper because X-Rite is transacting business in this jurisdiction, X-Rite's principal place of business is in this District, and X-Rite is organized as a corporation under the laws of Michigan.

6.     Venue is proper in this District under 28 U.S.C. §§1391(b) and (c), and 1400(b).

## BACKGROUND FACTS REGARDING RAH COLOR TECHNOLOGIES

7.     RAH Color Technologies is owned by Dr. Richard A. Holub, who is an original inventor of all its patent assets. Dr. Holub holds a Ph.D. in Neurophysiology and has studied and worked extensively in the fields of vision and color reproduction for over forty years.

8.      For example, between about 1983 and 1994, Dr. Holub worked for several leading companies including SuperMac Technologies, Eastman Kodak, and

Agfa/Beyer where we was a Principal Engineer, Technology Consultant, and had responsibility for color technology in graphic arts product development, respectively.

9.     Dr. Holub has additionally been a leader in development, research, and education in the graphic arts industry.

10.     For example, for ten consecutive years beginning in 1993-94, Dr. Holub was elected and served on the Board of Directors of The Technical Association of the Graphic Arts ("TAGA"), now a part of the Printing Industries of America.  For nine of those ten years, Dr. Holub was an officer, serving three years as Technical Vice President and Papers Chair, two years as Executive Vice President, two years as President and two as Immediate Past President.  During his three years as Technical VP, Dr. Holub organized four technical conferences, including TAGA's first-ever international conference, and TAGA's contributions to the Graphic Arts Show Company's "Conceppts" Conference in two successive years.

11.     Between 1995 and 1998, Dr. Holub taught in various instructional programs at Rochester Institute of Technology, especially taking responsibility for research methods courses offered to Master's students pursuing the technology concentration in the School of Printing Management and Sciences.  During that time he served on thesis committees for a number of students in the Master's program.  Many graduates of that program hold significant positions in the publishing and printing industries.  In addition, during the early 1990's, Dr. Holub served as a key technical contributor to early standards developed by CGATS, the Committee for Graphic Arts Technical Standards.

12.    Spanning almost two decades, Dr. Holub's R&D work (alone and with collaborators) resulted in 11 papers presented to TAGA's Annual Technical Conference, all of which subsequently appeared in published Conference Proceedings.  His research also resulted in the contribution of at least four (4) important papers to refereed journals, including the Journal of Imaging Technology and Color Research and Application, as well as contributions to symposia organized by The Society for Imaging Science and Technology (IS&T), the Society of Photo-Optical Instrumentation Engineers (SPIE), and the Institute of Electrical and Electronics Engineers (IEEE).

13.    In 1994, Dr. Holub began work on a new business.  He envisioned a business that would leverage inventive developments in color measurement, imaging system architecture, user-interface and color reproduction technologies to implement open and accurate color reproduction in a networked environment. Over the next several years, Dr. Holub studied the market, rented laboratory/demo space from RIT Research Corp., hired students from the Rochester Institute of Technology as well as software and hardware contractors to assist him in developing a first product prototype. The prototype combined instrumentation for fully automatic display calibration with software support for highly accurate soft-proofing. During this time, he also prepared and filed the first two in a series of significant patent disclosures to cover implementations of inventive concepts.

14.    Dr. Holub formed Imagicolor Corporation in 1998 in anticipation of commercialization of his prototype described above in paragraph 13. Further efforts at business development continued, however, investment did not materialize and Imagicolor was eventually dissolved.

4

15.     Though commercialization of the prototype did not come to fruition, Dr. Holub continued to innovate, and pursue patents on those innovations, with the United States Patent Office.  In 2005, RAH Color Technologies LLC was formed as a vehicle for an on-going licensing program for companies whose products depend on Dr. Holub's innovations.

## BACKGROUND FACTS REGARDING
## THE RAH COLOR TECHNOLOGIES PATENT PORTFOLIO

16.     The United States Patent Office has awarded Dr. Holub 22 patents to date, including the following Patents-in-Suit:

- United States Patent No. 7,312,897, entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '897 patent) (Exhibit 1);

- United States Patent No. 7,710,433, entitled "Methods and Apparatus for Calibrating a Color Display" (the '433 patent) (Exhibit 2);

- United States Patent No. 7,710,560, entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '560 patent) (Exhibit 3);

- United States Patent No. 7,715,052, also entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '052 patent) (Exhibit 4).

- United States Patent No. 7,729,008, also entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '008 patent) (Exhibit 5);

- United States Patent No. 7,791,761, also entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '761 patent) (Exhibit 6);

- United States Patent No. 8,009,175, also entitled "Methods and Apparatus for Calibrating a Color Display" (the '175 patent) (Exhibit 7);

- United States Patent No. 8,279,236, also entitled "Methods and Apparatus for Calibrating a Color Display" (the '236 patent) (Exhibit 8);

- United States Patent No. 8,416,444, also entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '444 patent) (Exhibit 9);

- United States Patent No. 8,537,357, also entitled "System for Distributing and Controlling Color Reproduction at Multiple Sites" (the '357 patent) (Exhibit 10).

17.    The number of references now considered by the United States Patent Office during the prosecution of Dr. Holub's patent applications exceeds 400. Additionally, hundreds of subsequently filed patent applications by third parties have cited to Dr. Holub's patents.

18.    RAH Color Technologies has licensed the technology covered by its patents to three of the largest manufacturers of color imaging and printing products for consumer and professional segments in the world.  These industry-leading companies have each recognized the contributions Dr. Holub has made to the fields of color management, remote proofing, and measurement and control of color product quality. Additionally, 13 major companies have entered into end-user license agreements.  With the exception of one company, all of the other current licensees elected to take a license to the RAHCT patent portfolio absent the initiation of patent infringement litigation.

19.    All right, title, and interest in the Patents-in-Suit are held by RAH Color Technologies.

**X-RITE'S AWARENESS OF THE PATENTS-IN-SUIT**

20.    At TAGA's Annual Technical Conference in the Spring of 2000, Dr. Holub presented an experimental analysis of the performance of his product prototype described in paragraph 13, which confirmed it could enable significantly streamlined

workflows and remote collaboration.  Following the presentation, a representative of X-Rite approached Dr. Holub to express an interest in the prototype and in the possibility of further discussions.

21.     X-Rite subsequently invited Dr. Holub to its office in Grandville, Michigan to discuss his display calibration technology and demonstrate his prototype, stating that "this area of Display calibration is very interesting to us due to the potential growth we see."

22.     Dr. Holub informed X-Rite that his prototype is a part of a larger system for accurate network color and that the system and its components are described in U.S. Patent No. 6,043,909, a patent in the same family as a number of the Patents-in-Suit.

23.     On June 11, 2000, Dr. Holub demonstrated his prototype and related innovations to X-Rite at its Grandville office.

24.     Although the technology demonstration at X-Rite's offices went well and favorably impressed members of the technical staff, at least one decision-maker apparently did not see a fit.  Subsequent efforts at follow-up by Dr. Holub led nowhere.

25.     On December 8, 2010, counsel for RAH Color Technologies sent a letter to X-Rite.  In that letter, the '897 patent, '433 patent, '560 patent, '052 patent, '008 patent, and the '761 patent were identified and the general focus of the claims was described.  Along with the letter, X-Rite was provided with a brochure containing additional detailed information about RAH Color Technologies' patented technology.  Finally, the letter offered to license or sell the portfolio.

26.     X-Rite never responded to the December 8, 2010 letter.

27.     On November 1, 2013, counsel for RAH Color Technologies again sent a letter to X-Rite offering it a license to RAH Color Technologies' patented technology (letter incorporated herein by reference).  Along with that letter, counsel for RAH Color Technologies provided X-Rite with eight (8) exemplary claim charts explaining, with specificity, how X-Rite's product offerings use the technology claimed by the '433 patent, the '560 patent, the '052 patent, the '008 patent, the '761 patent, the '175 patent, the '236 patent, and the '444 patent.

28.     On April 7, 2014, counsel for RAH Color Technologies sent X-Rite a copy of this Complaint.

29.     On April 30, 2014, counsel for RAH Color Technologies sent X-Rite another set of claim charts demonstrating several additional instances of infringement of the '560 patent, '008 patent, '175 patent, '236 patent, and '357 patent.

30.     To date, X-Rite has declined to take a license to the RAH Color Technologies patent portfolio.

31.     To the extent X-Rite asserts that it was not aware of any particular Patent-in-Suit prior to the initiation of this lawsuit, such knowledge is established, at the latest, on the day X-Rite received a copy of this Complaint.  X-Rite is similarly made aware, at the latest as of the day it received a copy of this Complaint, of the products and activities it has undertaken and is undertaking that constitute infringement and inducement of infringement of the Patents-in-Suit.  X-Rite is continuing such activities with knowledge of the Patents-in-Suit, knowledge that X-Rite is encouraging the infringement of the Patents-in-Suit by direct infringers, and acting with the specific intent that such infringement occur.

**PRODUCTS AT ISSUE**

32.     Accurate color measurement and management is central to the products made, imported, used, sold, and/or offered for sale in the U.S. by X-Rite.  These products include software and spectrophotometers/colorimeters that, alone or in combination, infringe various claims of the Patents-in-Suit.

**FIRST CLAIM FOR RELIEF**
**(Infringement of the '897 patent)**

33.     RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

34.     X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '897 patent: 27, 28, 29, 30, and 61.

35.     The group of infringing products includes, but is not limited to, the following:  i1iSis, i1iSis XL, i1Basic Pro 2, i1Display Pro, i1Photo Pro 2, i1Publish, and i1Publish Pro 2.

36.     X-Rite is directly infringing and continues to infringe the '897 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 35 that embody and/or practice claims of the '897 patent in violation of 35 U.S.C. § 271(a).

37.     In addition, X-Rite induces and continues to induce others to infringe the claims of the '897 patent in violation of 35 U.S.C. § 271(b).

38.     With knowledge of the '897 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '897 patent.  Through the distribution of

the product packages identified in paragraph 35, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 35 to use the i1Profiler software in combination with a networked computer system having a display/monitor, a colorimeter/spectrophotometer (i1Pro, i1Pro 2, i1Display Pro), and color output devices (e.g., printers, projectors, displays) to create certain custom profiles for those output devices and to provide control to a user for processing color images.

39.    With knowledge of the '897 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '897 patent.  Through the distribution of the product packages identified in paragraph 35, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 35 to use i1Profiler software in combination with a networked computer system having a display/monitor, a chart reader (e.g., i1iSis and i1iSis XL) and color output devices (e.g., printers) to create certain custom profiles for those output devices and to provide control to a user for processing color images.

40.    By providing instruction to users to combine the X-Rite hardware and software as described in paragraphs 38 and 39 and to use those products in combination for their intended purpose, X-Rite is instructing its users to infringe one or more claims of the '897 patent.

41.     As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '897 patent.

42.     X-Rite's conduct is willful and deliberate.

43.     As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

## SECOND CLAIM FOR RELIEF
### (Infringement of the '433 patent)

44.     RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

45.     X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '433 patent: 30, 31, and 32.

46.     The group of infringing products includes, but not limited to, the following:  EZcolor.

47.     On information and belief, X-Rite is directly infringing and continues to infringe the '433 patent by making, importing, using, selling, and/or offering for sale at least the product and technology identified in paragraph 46 that embodies and/or practices claims of the '433 patent in violation of 35 U.S.C. § 271(a).

48.     In addition, X-Rite induces and continues to induce others to infringe the claims of the '433 patent in violation of 35 U.S.C. § 271(b).

49.      With knowledge of the '433 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '433 patent.  Through the distribution of

the product package identified in paragraph 46, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 46 to use the EZcolor software in combination with a networked computer system having a display/monitor and color rendering devices (e.g., printers, displays) to calibrate those rendering devices.

50.     Indeed, X-Rite's instruction to make/configure and use the systems employing the hardware and software described in paragraph 49 encourages X-Rite's customers/users to make/configure and use a system featuring the EZcolor software that meets each and every element of at least one claim of the '433 patent.

51.     For example, through the materials described in paragraph 49, X-Rite instructs and encourages its customers to calibrate their rendering devices (e.g., printers, monitors, etc.) using the EZcolor software installed on a computer system by performing the following actions:

- Updating the calibration of at least one rendering device linked to a network including multiple rendering devices by modifying at least one of a tone reproduction curve, producing a color to color' transformation, or performing a calibration including a characterization of color mixture properties,

- Adjusting a color reproduction setting of one of the color rendering devices (e.g., monitor) in accordance with visual judgment of color match between a visible reference and the rendering by a physical rendering device,

- Storing those adjusted settings in device independent units of color so that the settings are later useable to improve color matching between the rendering devices.

52.     As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '433 patent.

53.     X-Rite's conduct is willful and deliberate.

54.     As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

## THIRD CLAIM FOR RELIEF
### (Infringement of the '560 patent)

55.     RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

56.     X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '560 patent: 16, 17, 18, 19, 20, 21, 23, 25, 26, 27, 31, 32, 33, 34, 35, 37, 38, 39, 40, 41, and 45.

57.     The group of infringing product packages includes, but is not limited to, the following: i1iSis, i1iSis XL, i1Basic Pro 2, i1Display Pro, i1Photo Pro 2, i1Publish, i1Publish Pro 2, and IntelliTrax ICC.

58.     On information and belief, X-Rite is directly infringing and continues to infringe the '560 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 57 that embodies and/or practices claims of the '560 patent in violation of 35 U.S.C. § 271(a).

13

59.     In addition, X-Rite induces and continues to induce others to infringe the claims of the '560 patent in violation of 35 U.S.C. § 271(b).

60.     With knowledge of the '560 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '560 patent.  Through the distribution of the product packages identified in paragraph 57, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 57 to use a chart reader (e.g., i1iSis, i1iSis XL) in combination with a networked computer system running i1Profiler software and one or more color output (rendering) devices (e.g., printers) to measure color test charts and create certain color profiles for printing rendering devices.

61.     With knowledge of the '560 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '560 patent.  Through the distribution of the product packages identified in paragraph 57, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 57 to use the IntelliTrax instrument in combination with a networked computer system running the IntelliTrax software and one or more color output (rendering) devices (e.g., printers) to measure color test charts and create certain color profiles for printing rendering devices.

62.     By providing instruction to users to combine the X-Rite hardware and software as described in paragraphs 60 and 61, and use those products in combination for

their intended purpose, X-Rite is instructing its users to infringe one or more claims of the '560 patent.

63.　As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '560 patent.

64.　X-Rite's conduct is willful and deliberate.

65.　As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

## FOURTH CLAIM FOR RELIEF
### (Infringement of the '052 patent)

66.　RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

67.　X-Rite and the product packages that it manufactures and sells infringe either directly or by inducement, at least one or more of the following claims of the '052 patent: 9, 10, 12, 13, 14, 15, 16, 33, 34, 35, 36, 37, 38, 39, 40, and 41.

68.　The group of infringing product packages includes, but is not limited to, the following: ColorMunki Display, ColorMunki Photo, ColorMunki Design, i1Display Pro, i1Basic Pro 2, i1Photo Pro 2, and i1Publish Pro 2.

69.　On information and belief, X-Rite is directly infringing and continues to infringe the '052 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 68 that embodies and/or practices claims of the '052 patent in violation of 35 U.S.C. § 271(a).

70.     In addition, X-Rite induces and continues to induce others to infringe the claims of the '052 patent in violation of 35 U.S.C. § 271(b).

71.     With knowledge of the '052 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '052 patent.  Through the distribution of the product packages identified in paragraph 68, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 68 to use a ColorMunki colorimeter/spectrophotometer in combination with a networked computer system running ColorMunki software and a user's rendering devices (e.g., projectors, displays, printers) in order to calibrate and create certain custom profiles for those rendering devices.

72.     With knowledge of the '052 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '052 patent.  Through the distribution of the product packages identified in paragraph 68, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 68 to use a colorimeter/spectrophotometer (e.g., i1Pro, i1Pro 2, i1Display Pro) in combination with a networked computer system running i1Profiler software and a user's rendering devices (e.g., projectors, displays, printers) in order to calibrate and create certain custom profiles for those user's rendering devices.

16

73.     By providing instruction to users to combine the X-Rite hardware and software as described in paragraphs 71 and 72 and to use those products in combination for their intended purpose, X-Rite is instructing its users to infringe one or more claims of the '052 patent.

74.     As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '052 patent.

75.     X-Rite's conduct is willful and deliberate.

76.     As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

### FIFTH CLAIM FOR RELIEF
**(Infringement of the '008 patent)**

77.     RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

78.     X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '008 patent: 43, 45, 52, 56, and 61.

79.     The group of infringing products includes, but is not limited to, the following:  i1Basic Pro 2, i1Display Pro, i1Publish, i1Publish Pro 2, i1Photo Pro 2, ColorMunki Photo, ColorMunki Display, and ColorMunki Design.

80.     On information and belief, X-Rite is directly infringing and continues to infringe the '008 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 79 that embodies and/or practices claims of the '008 patent in violation of 35 U.S.C. § 271(a).

17

81.     In addition, X-Rite induces and continues to induce others to infringe the claims of the '008 patent in violation of 35 U.S.C. § 271(b).

82.     With knowledge of the '008 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '008 patent.  Through the distribution of the product packages identified in paragraph 79, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 79 to use the i1Profiler software in combination with a networked computer system and an output device (e.g., printer, display) to control rendering of that output device.

83.     With knowledge of the '008 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '008 patent.  Through the distribution of the product packages identified in paragraph 79, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 79 to use the ColorMunki software in combination with a networked computer system and color rendering device (e.g., printer, display) to control rendering of that output device.

84.     By providing instruction to users to combine the X-Rite hardware and software as described in paragraphs 82 and 83, and to use those products in combination for their intended purpose, X-Rite is instructing its users to infringe one or more claims of the '008 patent.

85.     As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '008 patent.

86.     X-Rite's conduct is willful and deliberate.

87.     As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

### SIXTH CLAIM FOR RELIEF
### (Infringement of the '761 patent)

88.     RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

89.     X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '761 patent: 17, 18, 19, 20, 21, 22, 24, 28, and 29.

90.     The group of infringing product packages includes, but is not limited to, the following:  i1Basic Pro 2, i1Display Pro, i1Photo Pro 2, i1Publish, and i1Publish Pro 2.

91.     On information and belief, X-Rite is directly infringing and continues to infringe the '761 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 90 that embodies and/or practices claims of the '761 patent in violation of 35 U.S.C. § 271(a).

92.     In addition, X-Rite induces and continues to induce others to infringe the claims of the '761 patent in violation of 35 U.S.C. § 271(b).

93.     With knowledge of the '761 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '761 patent.  Through the distribution of

the product packages identified in paragraph 90, instruction manuals (both in printed

form and those materials distributed over and accessible on the Internet), user interfaces,

and other materials, such encouragement includes but is not necessarily limited to

instructing purchasers and users of the products identified in paragraph 90 to use a

colorimeter/spectrophotometer (i1Pro, i1Pro 2, i1Display Pro) in combination with a

networked computer system running i1Profiler software and a user's printer(s), which

have multiple non-neutral colorants and multiple neutral colorants, to calibrate and/or

create certain custom profiles for those printers.

94.     By providing instruction to users to combine the X-Rite hardware and

software as described in paragraphs 92 and 93, and to use those products in combination

for their intended purpose, X-Rite is instructing its users to infringe one or more claims of

the '761 patent.

95.     As evidenced by the actions set forth above, X-Rite had and has the

specific intent to induce others to infringe the '761 patent.

96.     X-Rite's conduct is willful and deliberate.

97.     As a direct and proximate result of X-Rite's acts of patent infringement,

RAH Color Technologies has been and continues to be injured and has sustained, and

will continue to sustain, substantial damages in an amount not yet determined.

## SEVENTH CLAIM FOR RELIEF
### (Infringement of the '175 patent)

98.     RAH Color Technologies incorporates by reference the allegations set

forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

20

99.    X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '175 patent: 14, 15, 16, 18, 19, and 20.

100.    The group of infringing product packages includes, but is not limited to, the following: i1Basic Pro 2, i1Display Pro, i1Photo Pro 2, i1Publish, i1Publish Pro 2, ColorMunki Photo, ColorMunki Design, and ColorMunki Display.

101.    On information and belief, X-Rite is directly infringing and continues to infringe the '175 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 100 that embodies and/or practices claims of the '175 patent in violation of 35 U.S.C. § 271(a).

102.    In addition, X-Rite induces and continues to induce others to infringe the claims of the '175 patent in violation of 35 U.S.C. § 271(b).

103.    With knowledge of the '175 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '175 patent. Through the distribution of the product packages identified in paragraph 100, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 100 to use the i1Profiler software in combination with a networked computer system, a colorimeter/spectrophotometer device (i1Pro, i1Pro 2, i1Display Pro) and the user's color display(s) to calibrate and create certain custom profiles for the user's color display(s).

104.    With knowledge of the '175 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '175 patent. Through the distribution of

21

the product packages identified in paragraph 100, instruction manuals (both in printed

form and those materials distributed over and accessible on the Internet), user interfaces,

and other materials, such encouragement includes but is not necessarily limited to

instructing purchasers and users of the products identified in paragraph 100 to use the

ColorMunki software in combination with a networked computer system, a ColorMunki

spectrophotometer and the user's color display(s) to calibrate and create certain custom

profiles for the user's color display(s).

105.    By providing instruction to users to combine the X-Rite hardware and

software as described in paragraphs 103 and 104, and to use those products in

combination for their intended purpose, X-Rite is instructing its users to infringe one or

more claims of the '175 patent.

106.    As evidenced by the actions set forth above, X-Rite had and has the

specific intent to induce others to infringe the '175 patent.

107.    X-Rite's conduct is willful and deliberate.

108.    As a direct and proximate result of X-Rite's acts of patent infringement,

RAH Color Technologies has been and continues to be injured and has sustained, and

will continue to sustain, substantial damages in an amount not yet determined.

### EIGHTH CLAIM FOR RELIEF
### (Infringement of the '236 patent)

109.    RAH Color Technologies incorporates by reference the allegations set

forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

110.    X-Rite and the product packages that it manufactures and sells infringe,

either directly or by inducement, at least one or more of the following claims of the '236

patent: 32, 33, and 34.

111. The group of infringing product packages includes, but is not limited to, the following:  ColorMunki Photo.

112. On information and belief, X-Rite is directly infringing and continues to infringe the '236 patent by making, importing, using, selling, and/or offering for sale at least product and technology identified in paragraph 111 that embodies and/or practices claims of the '236 patent in violation of 35 U.S.C. § 271(a).

113. In addition, X-Rite induces and continues to induce others to infringe the claims of the '236 patent in violation of 35 U.S.C. § 271(b).

114. With knowledge of the '236 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '236 patent.  Through the distribution of the product package identified in paragraph 111, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the product identified in paragraph 111 to use the ColorMunki spectrophotometer with the ColorMunki software and the DigitalPouch software in combination with at least two networked computers, each computer being associated with a display device, to determine a state of calibration of the display device associated with at least one of the computers to ensure that color images are displayed accurately.

115. By providing instruction to users to combine the X-Rite hardware and software as described in paragraphs 113 and 114, and to use those products in combination for their intended purpose, X-Rite is instructing its users to infringe one or more claims of the '236 patent.

116.    As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '236 patent.

117.    X-Rite's conduct is willful and deliberate.

118.    As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

### NINTH CLAIM FOR RELIEF
**(Infringement of the '444 patent)**

119.    RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

120.    X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '444 patent: 41, 45, 49, 52, 53, and 54.

121.    The group of infringing product packages includes, but is not limited to, the following:  i1Basic Pro 2, iDisplay Pro, i1Photo Pro 2, i1Publish, i1Publish Pro 2, ColorMunki Photo, ColorMunki Display, and ColorMunki Design.

122.    On information and belief, X-Rite is directly infringing and continues to infringe the '444 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 121 that embodies and/or practices claims of the '444 patent in violation of 35 U.S.C. § 271(a).

123.    In addition, X-Rite induces and continues to induce others to infringe the claims of the '444 patent in violation of 35 U.S.C. § 271(b).

124.    With knowledge of the '444 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '444 patent.  Through the distribution of

the product packages identified in paragraph 121, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 121 to use the i1Profiler software in combination with a networked computer system, a colorimeter/spectrophotometer device (i1Pro, i1Pro 2, i1Display Pro) and the user's color rendering devices (e.g., displays, printers) to control color reproduction of those rendering devices and create certain custom profiles of those devices.

125.    With knowledge of the '444 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '444 patent. Through the distribution of the product package identified in paragraph 121, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 121 to use the ColorMunki software in combination with a networked computer system, a ColorMunki spectrophotometer and the user's color rendering devices (e.g., displays, printers) to control color reproduction of those rendering devices and create certain custom profiles of those devices.

126.    By providing instruction to users to combine the X-Rite hardware and software as described in paragraphs 124 and 125, and to use those products in combination for their intended purpose, X-Rite is instructing its users to infringe one or more claims of the '444 patent.

127.    As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '444 patent.

128.    X-Rite's conduct is willful and deliberate.

129.    As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

### TENTH CLAIM FOR RELIEF
**(Infringement of the '357 patent)**

130.    RAH Color Technologies incorporates by reference the allegations set forth in paragraphs 1 through 32 of this Complaint as though set forth in full herein.

131.    X-Rite and the product packages that it manufactures and sells infringe, either directly or by inducement, at least one or more of the following claims of the '357 patent:  1, 2, 6, 20, 21, 23, 25, 31, and 32.

132.    The group of infringing product packages includes, but is not limited to, the following:  IntelliTrax Auto Scanning System, Color i5 Benchtop Spectrophotometer, and Color i7 Benchtop Spectrophotometer.

133.    On information and belief, X-Rite is directly infringing and continues to infringe the '357 patent by making, importing, using, selling, and/or offering for sale product packages and technology identified in paragraph 132 that embodies and/or practices claims of the '357 patent in violation of 35 U.S.C. § 271(a).

134.    In addition, X-Rite induces and continues to induce others to infringe the claims of the '357 patent in violation of 35 U.S.C. § 271(b).

135.    With knowledge of the '357 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '357 patent.  Through the distribution of

the product packages identified in paragraph 132, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 132 to use the IntelliTrax instrument with the IntelliTrax software in combination with a networked computer system to measure color and use the measured color data for color matching.

136.    With knowledge of the '357 patent, X-Rite has encouraged direct infringers to infringe one or more claims of the '357 patent.  Through the distribution of the product packages identified in paragraph 132, instruction manuals (both in printed form and those materials distributed over and accessible on the Internet), user interfaces, and other materials, such encouragement includes but is not necessarily limited to instructing purchasers and users of the products identified in paragraph 132 to use the i5 Spectrophotometer and i7 Spectrophotometer with the Color iQC software in combination with a networked computer system to measure color and use the measured color data for color matching.

137.    By providing instruction to users to combine the X-Rite hardware and software as described in paragraphs 135 and 136, and to use those products in combination for their intended purpose, X-Rite is instructing its users to infringe one or more claims of the '357 patent.

138.    As evidenced by the actions set forth above, X-Rite had and has the specific intent to induce others to infringe the '357 patent.

139.    X-Rite's conduct is willful and deliberate.

140.     As a direct and proximate result of X-Rite's acts of patent infringement, RAH Color Technologies has been and continues to be injured and has sustained, and will continue to sustain, substantial damages in an amount not yet determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff RAH Color Technologies requests that this Court enter judgment:

A.     Adjudging, finding, and declaring that X-Rite has infringed and/or induced infringement of claims of each of the Patents-in-Suit under 35 U.S.C. § 271;

B.     Adjudging, finding, and declaring that X-Rite's infringement is willful and deliberate;

C.     Adjudging, finding, and declaring that the Patents-in-Suit are valid and enforceable;

D.     Enjoining X-Rite and its subsidiaries, agents, officers, and employees, and all others acting in concert with them, from infringing and inducing infringement of the Patents-in-Suit, or, in the alternative, to impose a compulsory license on X-Rite for use of RAH Color Technologies' patented technology;

E.     Ordering X-Rite to pay RAH Color Technologies an amount that, as adequately as possible, compensates RAH Color Technologies for X-Rite's infringement, no less than a reasonable royalty;

F.  Ordering X-Rite to pay court costs, pre-judgment interest, post-judgment interest, and attorneys' fees under 35 U.S.C. §§ 284 and 285;

G.  Finding that this is an "exceptional case" pursuant to 35 U.S.C. § 285, and awarding enhanced damages up to and including treble the amount of damages and the payment of attorneys' fees; and

H.  Granting RAH Color Technologies such other further relief as is just and proper, or as the Court deems appropriate.

## JURY DEMAND

RAH Color Technologies demands a trial by jury on all issues presented in this Complaint.

Dated:  June 16, 2014                Respectfully submitted,

/s/ Nicholas Dudziak

David Berten (admission application forthcoming)
Nicholas Dudziak
Irwin Park
GLOBAL IP LAW GROUP, LLC
233 S. Wacker Drive
92nd Floor
Chicago, Illinois 60606
Phone:  312.241.1500
dbeten@giplg.com
ndudziak@giplg.com
ipark@giplg.com

Attorneys for Plaintiff RAH Color Technologies LLC